Louis H. Oppenheimer, Florence D. Frankel and Harold Gould, Appellants, v. Frank J. Cassidy, Dickinson Industrial Site, Inc., Walter A. Wade, Herbert E. Hillebrecht, and Benjamin Wham, Voting Trustees Under Trust Agreement Dated March 14, 1938, Appellees.

Gen. No. 45,343.

Opinion filed December 10, 1951. Released for publication January 7, 1952.

MULDER & FRANKEL, of Chicago, for appellants; JAMES R. FRANKEL, of Chicago, of counsel.

HARRY A. BIOSATT, and BENJAMIN WHAM, of Chicago, for appellees, and ROY JUUL, of Chicago, for certain appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Dickinson Industrial Site, Inc., was organized as a corporation under the laws of Illinois pursuant to a reorganization plan approved in the United States District Court for the Northern District of Illinois. Under the plan title to all assets remained in the corporation and 19,180 shares of stock were issued under a voting trust dated March 14, 1938, and terminating March 14, 1948. Walter A. Wade, Herbert E. Hillebrecht and Benjamin Wham were appointed voting trustees. On January 2, 1948, and following, the voting trustees addressed communications to the holders of participation certificates stating that some

213

of the shareholders had suggested that the trust agreement be extended for another ten years; that there were no encumbrances on the property; that all taxes were paid; that the property was adequately maintained and in good condition; and enclosing a card which certificate holders could sign and return stating that in consideration of similar consents by holders of participation certificates they were consenting to the extension of the voting trust agreement to March 14, 1958. The written agreement so signed reads as follows:

"The undersigned, in consideration of similar consents of holders of Participating Certificates representing Common Stock of Dickinson Industrial Site, Inc. hereby extend the duration of the Voting Trust Agreement of March 14, 1938, for an additional period of ten (10) years, expiring March 14, 1958.

"The undersigned hereby agree(s) that the shares of the undersigned of the Capital Stock of said Dickinson Industrial Site, Inc. shall continue to be held, voted and controlled in accordance with the provisions of said Trust Agreement of March 14, 1938 until March 14, 1958, with the same force and effect as if the date of termination of said Trust Agreement had been therein specified as March 14, 1958, instead of March 14, 1948."

The holders of more than 17,000 out of a total of 19,180 shares signed and returned the so-called extension agreement and the voting trustees continued to exercise the powers given to them by the agreement of March 14, 1938. On April 26, 1949, Frank J. Cassidy filed a complaint in chancery in the superior court of Cook county against the corporation and the trustees, alleging that he, as a holder of a trust certificate issued by the trustees, "brings this complaint in his own right and for the common use and benefit of all certificate holders and stockholders" of the corporation.

After reciting the facts as to the extension of the voting trust, Cassidy alleged that the extension was void for certain reasons therein stated; that the trustees failed to sell the property of the corporation despite an active market and high prices; that the rentals were lower than those customarily paid for similar properties during the period; that the trustees purchased a large amount of stock in the corporation; that the extension was for the purpose of gaining eventual control of the corporation and its properties to the detriment of the other stockholders; that the trustees paid themselves fees for alleged services; that the extension of the trust was to enable them to continue paying the fees; and that the trustees were about to make further illegal expenditures. Paragraph 7 of the Cassidy complaint states that the "interest of all other persons who are holders of certificates are identical with the interests of plaintiff who brings this suit for all said holders of participating certificates, and the suit is a representative suit for each and every one thereof, that plaintiff will properly present the matter on behalf of all such persons and the relief requested will inure to the benefit of all, and that the defendants have a list of all such persons and should be compelled to furnish plaintiff a list thereof so that notice of these proceedings may be given so that other holders may join if they desire." Cassidy prayed that the court decree that "this is a representative suit brought for and on behalf of all the persons interested in the subject matter of these proceedings as above described"; that the court may determine that the extension is void; that the stock be distributed to those entitled thereto, or, in the alternative that a construction may be had of the new voting trust agreement to determine its validity and the powers and duties of the voting trustees and the rights of the certificate holders and stockholders thereunder; that the trustees be required to refund all fees which

they collected since the termination of the trust on March 14, 1948; and that the trustees be removed and a receiver be appointed.

Answering the Cassidy complaint, defendants said that the procedure adopted was the creation of a new voting trust composed only of those voting trust certificate holders who, in writing, agreed to become parties thereto. The answer stated that the voting trust agreement was valid; that they used every effort to sell the property and to obtain the maximum rentals; denied that the trustees purchased a large amount of stock or that their purpose was to gain control of the corporation; stated that their fees were low for the services rendered; that when the trustees assumed management the corporation owed more than $300 in real estate taxes and penalties; that they paid off the taxes; that when they assumed control the property was "in very bad condition"; that they improved the property; that "it is now in first class condition"; and that they paid regular dividends beginning with November 20, 1940, first at the rate of $1 per share and later at the rate of $1.50 per share and "more recently $2 per share." They denied the allegations of paragraph 7.

On May 2, 1949, Cassidy moved for an order on defendants to furnish him with a list of the stockholders and certificate holders of the corporation. The motion was set for hearing on May 24, 1949, continued to June 8, 1949, and then to June 15, 1949, at 2:30 p. m. On June 14, 1949, on motion of plaintiff, the cause was set for hearing on June 15, 1949, at 2:30 p. m. On June 15, 1949, a decree was entered, reciting that the cause came on to be heard upon the complaint and the answer and that the court "heard testimony in open court," examined "the documentary evidence produced" and heard the arguments of counsel. The court found that plaintiff (Cassidy) "is the owner and holder of voting

trust certificates representing capital stock of Dickinson Industrial Site, Inc., and maintains this suit as a class action for and on behalf of himself and all other stockholders and voting trust certificate holders of Dickinson Industrial Site, Inc. The decree found the facts as to the organization of the corporation and the establishment of the original voting trust. It also found that by virtue of the affirmative action and approval of the holders of more than 17,000 shares out of a total of 19,180 shares of the capital stock of the corporation there was created a new voting trust agreement between the trustees and such certificate holders beginning March 14, 1948, and extending to March 14, 1958, upon the same terms and conditions as the voting trust agreement of March 14, 1938, except as to the provisions as to termination, and that the new voting trust "is valid and in full force and effect."

The decree further found that the certificate holders who did not affirmatively enter into the new voting trust agreement were duly notified that they were entitled to receive common stock in exchange for their voting trust certificates under the agreement of March 14, 1938; that the annual stockholders' meetings of the corporation have been held; that the directors held their meetings in accordance with law; that the directors, officers and trustees have operated the property in a "proper and efficient manner"; that they obtained from such operation the maximum income that could reasonably be expected, and paid out to the certificate holders and stockholders dividends at the rates stated in the answer; that the trustees and directors performed their duties efficiently and properly and that they were not guilty of any breach of duty; that they exercised "the utmost good faith in the discharge of their duties and obligations"; and that they exercised reasonable effort to sell the property and used due diligence in the management of the property. The

court found that pursuant to the prayer in the alternative for a construction of the voting trust agreement that such agreement is valid and in full force. The chancellor found that plaintiff presented evidence to show "the value of his services" in bringing about a construction and finding as to the validity of the voting trust agreement and that the services are beneficial to the corporation and to the shareholders and certificate holders "which as an entire class are benefited thereby," and that plaintiff is entitled to an allowance of $3,500 as fair and reasonable compensation for the services of his attorney. The court decreed that the "extended voting trust agreement is in fact a new voting trust agreement from March 14, 1948, until March 14, 1958, and is valid and in full force and effect," and that there be allowed to plaintiff $3,500 as attorney's fees.

On October 13, 1949, Louis H. Oppenheimer, Florence D. Frankel and Harold Gould, as stockholders of the corporation, filed a bill of review "in their own right and for the common use and benefit of all stockholders." They set up the proceedings and pleadings in the Cassidy case as hereinabove outlined. They then represented that the decree of June 15, 1949, should be reviewed, reversed and set aside "for many apparent errors and imperfections," pointing out that Cassidy, in paragraph 7 of his complaint, alleges that the interest of all other persons who are holders of participating certificates are identical with his interest; that he sues on behalf of all such certificate holders and that he would properly present the matter on behalf of all such persons; asserts that the complaint contains no such allegations with respect to the interest of the stockholders; that the interest of the stockholders and of Cassidy as a voting trust certificate holder who consented to the purported extension of the voting trust are antagonistic; that the stockholders

and the voting trust certificate holders are not in the same class; and that "despite the foregoing," the decree finds that the plaintiff is the owner and holder of voting trust certificates representing capital stock of the corporation and brings and maintains the suit as a class action for and on behalf of himself and all other stockholders and voting trust certificate holders of the corporation.

The bill of review further alleges that the stockholders and the certificate holders were not given notice of the pendency of the proceedings so that they could join therein if they so desired, despite the fact that in paragraph 7 of plaintiff's complaint he requested such relief, and his motion that defendants furnish a list of stockholders and certificate holders was entered and continued from time to time but never decided; that upon information and belief the original suit was fraudulent and collusive and not a true representative action, was not brought in good faith and was under the control of the voting trustees; that the decree was entered on the same afternoon the cause came on for hearing; that it appears from the face of the decree that it was prepared in advance of the hearing; that upon information and belief there was no transcript of evidence made of the purported hearing upon which the decree was based; that testimony was not heard and evidence was not submitted in support of the decree; that no briefs were filed on the question of law involved; that the decree erred in awarding attorney fees in that the suit was not a true representative class suit and was fraudulent and collusive; that no fund was brought into court for the common benefit of the purported class of plaintiffs from which such fee could be allowed; that the court erred in decreeing that the extended voting trust is in fact a new voting trust agreement and that it is valid; that such purported construction is contrary to the written agree-

ments executed by certain voting trust certificate holders; that the original trust agreement provides that "unless sooner terminated as hereinafter provided, this trust shall terminate on the 14th day of March, 1948, without notice by or to, or action on the part of the trustees or any parties hereto''; that no new voting trust agreement in writing or counterpart thereof has ever been deposited with the corporation at its registered office in contravention of an Act approved May 13, 1947; that more than 2,000 shares out of the total of 19,180 shares of stock are not parties to the new purported voting agreement; that it is illegal for the corporation to pay the fees, costs and expenses of the voting trustees representing less than all of the outstanding shares and for the majority stockholders to agree among themselves to make the nonparticipating minority shareholders share in the expense of the voting trust; that the interests of the other stockholders are identical with the interests of those who bring the suit; and that they bring the suit for and on behalf of all stockholders as a representative suit. They ask that the decree be reviewed and reversed; that the voting trust agreement be declared void; that the stock held by the trustees be ordered distributed to those entitled thereto; that the trustees be required to refund all fees which they collected since March 14, 1948; and that the trustees and Cassidy be ordered to repay to the corporation the $3,500 which he was awarded as attorney's fees. Defendants' written motion to strike and dismiss the bill of review was sustained. Plaintiffs, appealing, ask that the order be reversed and that the cause be remanded with directions to reinstate the bill of review, to require defendants to answer it, with further appropriate instructions that unless the answer raises an issue as to the accuracy of the record and pleadings as set out in the bill of review, that the decree of June 15, 1949, be reviewed and reversed, and granting plaintiffs the other relief prayed for therein.

■ ■ Defendants assert that plaintiffs cannot maintain their bill of review because they were not parties to the Cassidy complaint by name or parties or privies to that complaint by representation through the medium of a class suit. The parties are in agreement that Cassidy as a certificate holder could not properly represent the stockholders, who were and are in a different class. The interests of Cassidy and the stockholders were antagonistic. The stockholders were not represented in the original suit, nor their interests protected. In the preamble of the original complaint Cassidy said that he brought the suit for the common use and benefit of all certificate holders and stockholders. In paragraph 7 he alleges that the interests of all other persons who are holders of certificates were identical with the interests of plaintiff "who brings this suit for all said holders of participating certificates, and the suit is a representative suit for each and every one thereof" and "that plaintiff will properly present the matter on behalf of all such persons and the relief requested will inure to the benefit of all." The original decree found that plaintiff is the owner and holder of voting trust certificates and that plaintiff brought and maintained the suit for and on behalf of himself and "all other stockholders and voting trust certificate holders." The court, in granting relief in the decree, said that the new voting trust agreement was valid and in full force and effect and allowed attorney's fees. No relief was granted in favor of or against the stockholders. A representative action is not such merely because the parties so designate it. *Thomas v. 4145 Broadway Hotel Co.*, 342 Ill. App. 308; *South East National Bank of Chicago v. Board of Education*, 298 Ill. App. 92. In the *Cassidy* case the stockholders were not represented by others of the same class and there were no persons before the court whose interests were such that the interests of the stockholders would receive actual or efficient protection.

221

The draftsmanship of the complaint and decree in the *Cassidy* case is subject to criticism. We are satisfied, however, that a person reading these documents would recognize that under the principles of law applicable to class suits that Cassidy did not and could not represent the stockholders therein. See *Hansberry v. Lee,* 311 U. S. 32; *Weberpals v. Jenny,* 300 Ill. 145, 155. The decree in the original complaint did not and could not bind the stockholders as they were not parties to it by name or representation. As the stockholders are not bound by the decree, they have a right to challenge it in a collateral proceeding. Plaintiffs, as stockholders were not parties to the *Cassidy* suit by name or by class representation, are not bound by the decree therein and have no standing to complain.

 We agree with defendants that plaintiffs as stockholders are not interested in the question of whether other persons had entered into a voting trust agreement. The stockholders, at the termination of the voting trust, had the right and power to enter into an agreement between themselves to extend or to make a new voting trust agreement with the same provisions as the expired trust. The holders of more than 17,000 out of 19,180 shares agreed to extend or make a new voting trust for an additional ten-year period. Apparently all of these beneficiaries are satisfied and have no desire to withdraw from or annul the trust they entered into. In our view it is immaterial whether the agreement be called an extension of the voting trust or a new voting trust. In either case it is only binding upon those who agreed to be bound. Plaintiffs did not choose to be bound by it and have no just cause to complain.

 Plaintiffs say that if the original voting trust agreement be treated as having been extended, it violates par. 157.30a of chap. 32, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 32.030(1)], which provides that any number of shareholders of a corporation may

create a voting trust for a period not to exceed ten years. We are of the opinion that the shareholders created a voting trust for a period not to exceed ten years, and in doing so they did not violate the statute. Paragraph 157.30a provides that any such trust agreement shall not become effective until a counterpart of the agreement is deposited with the corporation at its registered office. Plaintiffs allege that "no new voting trust agreement in writing or a counterpart thereof has ever been deposited with the corporation at its registered office." In the *Cassidy* decree the court found that the new voting trust agreement is valid and in full force and effect. This would include all steps to make the new trust agreement valid. Plaintiffs cannot allege a fact contrary to the findings of the decree. It may be that evidence was offered and received on the hearing of the *Cassidy* case and that the written agreement or counterpart was filed with the corporation. The allegation in the bill of review that the written agreement or counterpart thereof was not filed with the corporation is new matter. As plaintiffs did not obtain leave of court before filing their bill of review, they cannot allege new matter. On appeal, defendants are entitled to urge every ground presented by the record which supports the order in their favor. *Vieceli v. Cummings,* 322 Ill. App. 559.

It is unnecessary to extend this opinion by discussing other points urged by the parties. For the reasons stated the order of the superior court of Cook county is affirmed.

*Order affirmed.*

FRIEND, J. and NIEMEYER, J., concur.