Sam J. Stein, Appellee, v. Isse Koch and Company, Chicago, Inc., and Le Ross Company, Inc., Appellants.

Gen. No. 45,891.

Opinion filed April 22, 1953. Rehearing denied May 19, 1953. Released for publication June 3, 1953.

RICHARD M. WEINBERGER, of Chicago, for appellants.

JESSE H. BROWN, of Chicago, for appellee.

MR. PRESIDING JUSTICE LEWE delivered the opinion of the court.

Plaintiff, a salesman, filed a complaint in equity praying for an accounting for commissions alleged to be due him from defendants. The cause was referred to a master in chancery. On defendants' motion at the close of the plaintiff's case the master recommended dismissal of the complaint for want of equity. No evidence was offered by defendants. Exceptions filed to the master's report were sustained by the chancellor and defendants having elected to stand on their motion to dismiss, the chancellor entered a decree, in favor of plaintiff, from which defendants appeal.

In November 1934 defendant Isse Koch & Co., a manufacturer's representative, employed plaintiff as a salesman in certain western states. His compensation was fixed at five per cent of the total shipments of merchandise at the price of the factory to the customer. Commencing in 1941 plaintiff also sold furniture for Novelty Furniture Company. This firm later became known as Le Ross Company, Inc. Lester Rosenberg, president of both defendant companies, employed plaintiff.

173

Early in May 1942 when plaintiff was about to be inducted into the Armed Forces, Rosenberg asked plaintiff what he intended to do with his territory. Plaintiff stated he had planned to engage one John Shea, an experienced furniture salesman, while plaintiff was in the Army. According to plaintiff, Rosenberg told plaintiff the deal would be "O.K." with him "so long as Shea was satisfied." June 5, 1942 plaintiff was inducted into the Armed Forces of the United States. During the period from June 5, 1942 when plaintiff entered the Army until October 1943 defendants paid to plaintiff the commissions for sales made by Shea in the designated territory and plaintiff paid one-half of these commissions to Shea. After October 1943 defendants paid Shea directly the entire commission for merchandise sold.

Plaintiff's claim is for commissions on sales made by Shea from October 1943 until September 1945 when he resumed his employment for defendant Isse Koch & Co. in the same territory. Defendant Le Ross Company did not reinstate plaintiff.

Defendants contend that plaintiff's evidence shows that the contract of employment was not for a fixed term and therefore was terminable at will.

Plaintiff testified positively that his arrangement with Shea was for the "duration" of his military service and that Rosenberg agreed to plaintiff's employment of Shea for this period. Rosenberg's testimony was vague and uncertain. He testified:

"I said that we would temporarily let him [plaintiff] carry our lines through Mr. Shea who worked with him, provided he paid him a living wage, which he agreed to do. I don't think there was any definite agreement but it was understood that he was to pay him at least four or five per cent. I don't know whether I always remembered the conversation or not. We paid

174

him for some of the time he was in the Army. I have no idea how long. I knew that Stein and Shea had an arrangement as to the division of commissions but didn't know what it was. I don't recall communicating in writing with Stein my decision to pay all the commission to Shea."

Before entering the Army plaintiff had served defendants in the designated territory for about eight years. The master found that almost all of the business done by defendants in plaintiff's territory was obtained by plaintiff's own efforts. The uncontroverted evidence shows that defendant paid plaintiff his full commissions for almost two years after he entered the military service, and then, without any notice to plaintiff, sent the commission checks directly to Shea, thus disregarding Shea's agreement with plaintiff.

██ In *Davis v. Englestein*, 263 Ill. App. 57, at page 61, this court said:

"Obviously no set form of words or course of conduct is required to make the employment at will or for a specific period of time but each case must be determined on its own facts. All of the attendant conditions surrounding the agreement, as well as the terms of the contract itself, when the contract is not clear, the course of dealing and other acts, must be taken into consideration in determining the question whether the employment is at will or for a definite term."

██ Defendants say Rosenberg was plaintiff's witness and his testimony is binding upon the plaintiff because it was not rebutted. This contention is without merit. The record shows that Rosenberg was called by plaintiff as an adverse witness under section 60 of the Civil Practice Act, Ill. Rev. Stats. 1951, ch. 110, sec. 184 [Jones Ill. Stats. Ann. 104.060]. Plaintiff did not vouch for Rosenberg's veracity. (*Crowder v. Nuttall*, 285 Ill. App. 254.) Nor is he concluded by his testi-

mony, since Rosenberg did not become a witness for plaintiff in the true sense of that term. (*Horner v. Bell*, 336 Ill. App. 581.)

██ A contract calling for continual performance and containing no provision for its duration is ordinarily terminable at will. In the instant case, however, the evidence clearly shows that the agreement between plaintiff and defendant was to run for the period of plaintiff's service in the Army. In other words, the duration of the agreement was to be determined by the occurrence of an event, namely, plaintiff's discharge from military service. This in our view is sufficient to fix the term of the contract of employment. (*Cronk v. Vogt's Ice Cream*, 15 N. Y. S. (2d) 649.)

█ In making the agreement with Shea, plaintiff no doubt sought to maintain his contacts and good will with his patrons during his absence but defendants were also given the advantage of Shea's service in promoting the sale of their merchandise. These mutual benefits flowing to each of the parties as a result of the agreement here in controversy constitute a sufficient consideration.

██ No precise rule can be laid down as to when chancery will assume jurisdiction on the ground of inadequacy of the remedy at law, since this is a matter largely in the discretion of the court to be determined in accordance with the circumstances of the particular case and the relief sought. (Illinois Law and Practice, Vol. 1, page 216; *Mayr v. Nelson Chesman & Co.*, 195 Ill. App. 587.) In this case the evidence shows that many items of furniture and household furnishings were sold by Shea over a widely scattered area in six western states during plaintiff's absence; that plaintiff and Shea both resided at Denver, Colorado, and defendants' offices are located at Chicago, Illinois; that all the evidence of the sales made by Shea of defendants' merchandise during the period in question is

176

within the control of defendants and that defendants agreed to render an account to plaintiff on sales made by Shea. In our opinion the remedy at law, under the circumstances shown by this record, is inadequate.

For the reasons given the decree is affirmed.

*Decree affirmed.*

FEINBERG and KILEY, JJ., concur.